# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49641-1-II |
| Respondent, | |
| v. | |
| JONATHAN DANIEL HARRIS, | |
| Appellant. | Consolidated with |
| In the Matter of the Personal Restraint Petition of | No.  50000-1-II |
| JONATHAN DANIEL HARRIS, | PART PUBLISHED OPINION |
| Petitioner. | |

WORSWICK, J. — Jonathan Harris pleaded guilty to second degree murder, second degree assault, and third degree assault.  Harris stipulated that sufficient facts supported the plea to second degree murder; however, he pleaded guilty to second degree assault and third degree assault in accordance with *In re Personal Restraint of Barr*.[1]  As part of his plea agreement, Harris signed a written waiver of his appeal rights.

In this consolidated appeal and personal restraint petition (PRP), Harris argues that his guilty plea was not voluntary and intelligent, that the superior court's calculation of his offender score violated the prohibition against double jeopardy, and that newly discovered evidence

---

[1] 102 Wn.2d 265, 684 P.2d 712 (1984).

undermines the factual basis for his plea. In the published portion of this opinion, we hold that Harris's plea was voluntary and intelligent and that he waived his right to appeal his sentence. In the unpublished portion of this opinion we hold that Harris fails to meet the standard for newly discovered evidence to merit withdrawal of his plea. Thus, we affirm Harris's convictions and sentence, and we deny his PRP.

FACTS

I. CHARGES

In June 2015, the State charged Harris with second degree felony murder of Nicole White, predicated on second degree assault. The State's probable cause declaration detailed that earlier on the day White died, she and Harris had left a bar together, and that Harris's neighbor had seen a woman matching White's description at Harris's home and had also heard a female screaming. The declaration stated that police found White's body wrapped in a canvas tarp down the side of an embankment. White had suffered multiple broken bones in her skull. The declaration also stated that photographic and cell phone location evidence showed that on the day of White's death, Harris had driven his vehicle near the same embankment where police found White's body. The declaration further stated that police found a sweatshirt in Harris's home with White's blood on it.

On November 4, the State filed an amended information charging Harris with first degree premeditated murder, asserting that Harris "did unlawfully and feloniously, with premeditated intent to cause the death of another person" cause White's death. Clerk's Papers (CP) at 5. The superior court arraigned Harris on the new charge. The State's supplemental probable cause

2

declaration stated that in addition to multiple broken skull bones, White's sternum had sustained injuries consistent with being stomped on.

## II. GUILTY PLEA

A. *Plea Agreement*

On July 27, 2016 the State filed a second amended information charging Harris with second degree felony murder, second degree assault, and third degree assault of White.[2] That same day, Harris signed a plea agreement, agreeing to plead guilty to the amended charges. Harris's statement on plea of guilty said, "[I]n the early morning hours of June 7, 2015, at my residence in Pierce County, Washington State, with intent to cause her death, I severely beat Nicole White, a human being, and thereby caused her death." Clerk' Papers (CP) at 27. Instead of stating a factual basis for the assault charges, Harris acknowledged that under *Barr*, he was pleading guilty to the assaults, which were crimes he did not commit and for which there is no factual basis, "in order to take advantage of the plea agreement reached with the State." CP at 14.

In an addendum to his guilty plea, Harris stated:

> I understand that the prosecution would be unable to prove the amended charges in Counts II and III at trial, but I see pleading guilty to the amended charges as being beneficial to me because it will allow me to avoid the risk of conviction on the greater charges I would face at trial. Based upon a review of the alternatives before me, I have decided to plead guilty to crimes I did not commit in order to take advantage of the State's pretrial offer.

---

[2] We assume Harris was arraigned on the original and the amended informations, but the record on appeal contains neither the verbatim report of proceedings nor orders establishing conditions of release establishing these facts.

Suppl. CP at 547. Harris also stipulated to the facts and statements from the State's probable

cause declaration. Harris further stated in his addendum that his counsel had discussed "all of

the elements of the original charge" with him and that he understood them all. Suppl. CP at 547.

Harris stipulated to his criminal history and further stipulated that his offender score

would be 7 points for the second degree murder conviction. He stipulated that the second degree

murder, second degree assault, and third degree assault each occurred on separate dates. In the

plea agreement, Harris also waived his right to an appeal for "any and all other appellate rights

[other than the right to appeal any sentence outside of his standard sentencing range] as part of

this plea agreement in accordance with *State v. Lee*."[3] CP at 14. Harris and his counsel both

signed acknowledgements that his counsel had consulted and reviewed the plea agreement with

Harris.

B.      *Plea Hearing*

On July 28, at Harris's plea hearing, the superior court engaged in a lengthy colloquy

with Harris. Although the superior court did not directly ask Harris about his appeal rights

waiver, the court inquired whether he had read his statement on the guilty plea, reviewed it with

his counsel, understood everything, and had all of his questions answered. Harris responded

affirmatively to all of the court's questions in this regard. Harris affirmed that he had no

"confusion" or "questions" regarding the plea. 1 Report of Proceedings (RP) at 14. Harris's

defense counsel also informed the court that he "went through the plea form with [Harris] in

---

[3] 132 Wn.2d 498, 505, 939 P.3d 1223 (1997) ("[T]here is nothing per se wrong with the State negotiating for a plea agreement which includes an agreement to waive the right to appeal a criminal conviction.").

No. 49641-1-II;
Cons. No. 50000-1-II

detail" and that Harris understood "his obligations under [the] plea agreement." 1 RP at 7-8. At

the end of the colloquy, the superior court stated:

> As to Counts 2 and 3 [the assaults], those are in the form of an *In Re Barr* plea and
> because of that I have read the original declaration that supports the original
> charges, the prosecutor's statement. I believe that does support the charges—more
> serious charges frankly, and I'm incorporating that declaration into this statement
> of defendant on plea of guilty.

1 RP at 20-21. The superior court concluded that Harris's plea was made freely, voluntarily,

intelligently, and with an understanding of the consequences.

### III. SENTENCING

Harris was sentenced on October 31.[4] Harris objected to an offender score of 7 for the

second degree murder conviction. In response, the State asserted that Harris should be held to

his bargain and stipulations in the plea agreement. Notwithstanding Harris's objection, the

superior court calculated Harris's standard range sentence for second degree murder based upon

an offender score of 7. The court then sentenced Harris to a standard range sentence of 316

months in prison.

Harris appealed his judgment and sentence. Harris also filed a CrR 7.8 motion for relief

from judgment. The superior court transferred Harris's CrR 7.8 motion to this court to consider

as a PRP. We consolidated Harris's direct appeal and his PRP.

---

[4] In August, Harris unsuccessfully moved pro se to withdraw his guilty plea. In September, he
obtained new counsel.

5

ANALYSIS

DIRECT APPEAL

I. VALIDITY OF PLEA

Relying on *Barr* and CrR 4.2, Harris contends that his guilty plea is invalid because he was unaware that the nature of the original charge was premeditated murder and not second degree murder. The State's only response to this issue is that Harris invited this error, or alternatively, waived this argument in his plea agreement.[5] We hold that Harris did not waive his right to challenge the validity of his plea and that Harris's plea was valid because it was intelligent and voluntary.

A.      *Legal Principles*

        1. *In re Personal Restraint of Barr*

We review whether a defendant's guilty plea was intelligent and voluntary de novo because it is a constitutional issue. *State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004). We also review de novo issues concerning the interpretation of a plea agreement. *State v. Bisson*, 156 Wn.2d 507, 517, 130 P.3d 820 (2006).

Due process requires a defendant to intelligently and voluntarily enter into a guilty plea. *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 594, 316 P.3d 1007 (2014). Under *Barr*, a defendant may plead guilty to technically infirm charges to avoid conviction for a greater offense. *See* 102 Wn.2d at 269-70. To comport with due process, such a plea must be based on

---

[5] Harris did not respond to the State's argument that his written waiver precludes his right to appeal.

an "informed review of all the alternatives before the accused." *Barr*, 102 Wn.2d at 270. The accused must understand "the nature and consequences of the plea bargain" and have "determined the course of action that he believes is in his best interest." *Barr*, 102 Wn.2d at 270.

Before accepting a plea under *Barr*, the plea court must find a factual basis to support the original charge, and determine that the defendant understands the relationship of his conduct to that charge. 102 Wn.2d at 271. Moreover, the defendant must be aware that the State's evidence on the original offense is sufficient to convince a jury of his guilt. *Barr*, 102 Wn.2d at 270.

2. *Waiver*

A defendant may expressly waive his right to appeal in a plea agreement. *State v. Lee*, 132 Wn.2d 498, 505, 939 P.2d 1223 (1997). "Waiver of the right to appeal must be made intelligently, voluntarily, and with an understanding of the consequences." *Lee*, 132 Wn.2d at 506. To show the defendant's understanding, "the State must prove a defendant understood both his right to appeal and the effect of a waiver." *State v. Neff*, 163 Wn.2d 453, 459, 181 P.3d 819 (2008). Signing a waiver statement and admitting to understanding it creates a strong, but not conclusive, presumption that the waiver was voluntary. *Neff*, 163 Wn.2d at 459.

B.      *Waiver of Right To Challenge Plea Agreement*

The State appears to argue that because Harris's plea agreement contains a waiver, Harris has waived his right to appeal even the validity of his plea. We disagree.

Harris argues that his entire plea is invalid, including the waiver. If a plea agreement is not intelligent and involuntary, then any waiver contained in the plea is similarly flawed. *See State v. Smith*, 134 Wn.2d 849, 853, 953 P.2d 810 (1998) (holding that when a plea containing a

waiver of the right to appeal is valid, the waiver itself is also valid). Thus, we reject the State's

argument that Harris waived his right to appeal the validity of his plea agreement. Harris cannot

be bound by a waiver that was not made intelligently, voluntarily, and with an understanding of

the consequences. *Stockwell*, 179 Wn.2d at 594. Thus, we examine whether Harris's plea was

intelligent and voluntary.

C.      *Valid Plea*

Harris argues that his plea was invalid because the superior court failed to determine

whether Harris (1) understood what the original charge was, (2) was aware of the relationship

between his conduct and the greater charge of premeditated first degree murder, (3) was aware of

the evidence available to the State to convince a jury of his guilt, and (4) understood the nature

and consequences of the plea bargain and whether he believed that the plea was in his best

interest. We disagree.

   1. *"Original" Charge*

Harris first appears to argue that it is unclear from the record that he understood that

premeditated first degree murder was the greater "original" charge. Br. of App. at 10. Harris

asserts that the record does not show which charge, the premeditated first degree murder charge

or second degree murder charge, the court was referring to during the plea hearing when the

court discussed the "more serious" and "original" charge. Br. of App. at 11. Harris's argument

fails.

An amended information supersedes an earlier original information. *State v. Oestreich*,

83 Wn. App. 648, 651, 922 P.2d 1369 (1996). An amended information that is complete on its

face and is entitled "Amended Information," shows that it was intended to change the offense charged. *State v. Kinard*, 21 Wn. App. 587, 589, 585 P.2d 836, 838 (1978).

Here, well before the plea hearing, the State filed the amended information charging Harris with premeditated first degree murder, superseding the first information that charged Harris with second degree murder. The State filed the information in open court and the amended information changed the offense charge. Harris therefore must be deemed aware that he had been charged with premeditated first degree murder at the time of his plea.

Moreover, Harris stated that he was pleading guilty to second degree murder and two assault charges to "avoid the risk of conviction on the greater charges [he] would face at trial." Suppl. CP at 547. Harris stated that he saw pleading guilty to the charges as being beneficial to him. The original information charged Harris only with second degree felony murder. Harris pleaded guilty to second degree murder plus two additional assault charges. Harris's plea statements show that he understood he was facing a charge greater than second degree murder. There would be no "benefit" to pleading guilty to second degree murder and two assaults unless Harris was fully aware that premeditated first degree murder was the greater charge he was avoiding.

Because an amended information supersedes the original information, because the State provided Harris with the new information in open court, and because Harris stated that he was incurring a benefit by pleading, the record shows that Harris knew that the "greater charge" was premeditated first degree murder. Harris's argument fails.

2. *Relationship of Harris's Conduct to Charge*

Harris next argues that the record does not show that he understood the relationship of his conduct to the charge of premeditated first degree murder. We disagree.

Harris admitted to severely beating White with the intent to kill her. Harris also stipulated to the facts and statements from the State's probable cause declaration which detailed the medical examiner's findings of multiple broken bones in White's skull and a fracture in the her sternum consistent with having been stomped. The declaration also detailed that a sweatshirt with White's blood on it was found in Harris's home and that photographic and cell phone evidence placed Harris at the location where police found White's body. Harris also affirmed that he understood the plea and the greater charge, which in this case was premeditated first degree murder.

Harris's addendum to the guilty plea clearly shows that he considered the State's evidence and also considered how his conduct of beating and killing White related to the greater charge of premeditated first degree murder. Accordingly, Harris's argument that he did not understand how his conduct related to the charge of premeditated first degree murder fails.

3. *Evidence Available to the State*

Harris also argues that he was not aware of the evidence available to the State on the original offense. We disagree.

As discussed above, Harris stipulated to the facts of the probable cause declaration that detailed the State had photographic and cell phone evidence that placed Harris near the location where White's body was found. The declaration also described that the sweatshirt Harris wore

the night of White's death had White's blood on it, and the declaration referenced the medical report that showed that White's injuries were consistent with having been stomped on.

Moreover, Harris affirmed that he understood the plea and that he went over it with his counsel. Harris was aware of the evidence available to the State, and his argument fails.

4. *Nature and Consequences of the Plea*

Harris also argues that he did not understand the nature and consequences of the plea bargain. We disagree.

The State's first amended information detailed all the elements of premeditated first degree murder. In his addendum to his statement on defendant's plea of guilty, Harris stated that his attorney discussed "all of the elements of the original charge" and that he understood "them all." Suppl. CP at 547. At the plea hearing, the court asked Harris if he had gone through the plea on guilty and if he understood everything, to which Harris affirmed that he did. Harris also affirmed that he had no "confusion" regarding the plea. 1RP at 14. Further, Harris's defense counsel also informed the court that he went through the plea form with Harris in detail and that he thought Harris understood his obligations under the plea agreement. Harris also stated that he saw that pleading guilty to second degree murder and the two assault charges that did not have a factual basis as being "beneficial" to him because it would allow him to avoid the risk of conviction on the greater charge he would face at trial.

The record shows that Harris confirmed that he understood the plea, and that he had weighed the alternatives of either going to trial on the charge of premeditated first degree murder

11

or pleading to a lesser murder charge and two assault charges for which there was no factual basis. It is, therefore, apparent that Harris understood the nature and consequences of his plea.

We conclude that the record shows that Harris understood that he was pleading guilty to charges for which there was no factual basis and understood the nature of the greater charge of premeditated first degree murder and the consequences of his plea. Harris also understood how his conduct related to the original charge of premeditated first degree murder and the evidence the State had available to it. Accordingly, Harris presents no convincing evidence to overcome the presumption that his plea was knowing, intelligent, and voluntary. Harris's argument that his plea was invalid fails.

## II. OFFENDER SCORE ARGUMENT WAIVED

Harris also appeals his sentence, arguing that inclusion of the two assault convictions in his offender score violated double jeopardy principles, and accordingly the Sentence Reform Act on 1981, chapter 9.94A RCW, because it imposed two assault convictions for one act of murder. Because Harris's written waiver was valid, he waived the right to appeal his sentence.

Harris's plea agreement included a waiver statement:

> The defendant understands that he has a right to appeal his convictions. The defendant understands that since he has entered pleas of guilty to the charges in the second amended Information, he has waived his right to raise certain issues, as discussed in his Statement of Defendant on Plea of Guilty, in an appeal. The defendant understands that he has a right to appeal any sentence that is outside of his standard sentencing range. *The defendant hereby waives any and all other appellate rights pertaining to this conviction and sentence as part of this plea agreement* in accordance with *State v. Lee*, [132 Wn.2d at 505-06].

12

No. 49641-1-II;
Cons. No. 50000-1-II

CP at 14 (emphasis added). Harris and his counsel signed acknowledgements that stated that

counsel reviewed the entire plea agreement with Harris and that Harris had made an informed

and voluntary choice to enter into the agreement. As discussed above, Harris's express waiver of

his right to appeal was intelligent, voluntary, and made with an understanding of its

consequences. Neither Harris nor his counsel expressed a misunderstanding of the scope of the

waiver. And the waiver clearly sets forth its terms: Harris waived his right to appeal any

sentence except a sentence outside his standard sentencing range. Finally, Harris told the

superior court that he understood all of his plea agreement after carefully reviewing it with his

attorneys.

Moreover, Harris does not address his signed waiver. He makes no argument that under

the law or the facts of this case, he should not be bound by his express waiver. Because the right

to appeal may be waived, Harris signed a valid waiver and Harris makes no attempt to explain

why we should not adhere to the waiver, we do not review his arguments.[6]

We affirm Harris's convictions and sentence.

A majority of the panel having determined that only the foregoing portion of this opinion

will be printed in the Washington Appellate Reports and that the remainder shall be filed for

public record in accordance with RCW 2.06.040, it is so ordered.

---

[6] Harris relies upon *In re the Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618
(2002) to support his argument that he could not agree to a sentence based on a miscalculated
offender score. But *Goodwin* is distinguishable because in that case, the defendant did not
affirmatively waive his right to appeal like Harris did. 146 Wn.2d at 865.

13

No. 49641-1-II;
Cons. No. 50000-1-II

PRP

## I. FACTS

In support of his PRP, Harris provides allegedly newly discovered evidence that the victim's injuries occurred after her death. This evidence includes an unsigned declaration from Harris's attorney recounting Harris's version of events—that he punched the victim once, attempted to perform CPR, then panicked and threw her body off a hillside, onto large rocks.

The attorney's declaration also summarizes a defense interview of the medical examiner who examined the victim's body. The examiner purportedly informed Harris's defense team that the victim's body had blunt force trauma injuries caused by an unknown instrumentality. The examiner stated that efforts at resuscitation or to dispose of the body could have caused the trauma. Finally, the examiner "was not willing to opine that the traumas to [the victim] were due to stomping." PRP at 25.

## II. DISCUSSION

In his PRP, Harris asserts that he should be allowed to withdraw his guilty plea because newly discovered evidence shows that his guilty plea lacked a factual basis.[7] We deny Harris's PRP because he fails to show that he could not have discovered the evidence before his guilty plea through the exercise of due diligence.[8]

---

[7] Harris also appears to challenge the constitutionality of *Barr* pleas in his PRP reply. But we do not review issues first raised and argued in a reply brief. *In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 327, 394 P.3d 367 (2017).

[8] The State does not argue that Harris waived his ability to collaterally attack his conviction and sentence by way of PRP. Accordingly, we address Harris's PRP arguments.

14

No. 49641-1-II;
Cons. No. 50000-1-II

A.      *Legal Principles: PRPs and Guilty Pleas*

We may deny, grant, or transfer a PRP to superior court for a full determination on the merits or a reference hearing. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). We grant relief in a PRP if the petitioner can establish either a constitutional error that caused actual and substantial prejudice or a nonconstitutional error that is "a fundamental defect resulting in a complete miscarriage of justice." *In re Pers. Restraint of Yates*, 177 Wn.2d at 18. And we transfer for a reference hearing if the petitioner makes a prima facie showing of actual prejudice, but we cannot determine the merits of his contentions solely on the record. *Yates*, 177 Wn.2d at 18.

"To obtain relief in a personal restraint petition, based on newly discovered evidence," the petitioner "must satisfy the traditional five-factor test for obtaining a new trial based on newly discovered evidence." *In re Pers. Restraint of Reise*, 146 Wn. App. 772, 781, 192 P.3d 949 (2008). The petitioner must establish that the evidence

> (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.

*Reise*, 146 Wn. App. at 781 (quoting *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981)). Where the petitioner's conviction resulted from a guilty plea, the third factor requires the petitioner to show that he could not have discovered the evidence before his guilty plea. *Reise*, 146 Wn. App. at 781.

15

No. 49641-1-II;
Cons. No. 50000-1-II

B.        *Not Newly Discovered Evidence*

In order to withdraw his guilty plea on the basis of newly discovered evidence, Harris must show that the evidence he relies upon was discovered since his guilty plea and could not have been discovered before the plea by the exercise of due diligence. *See Reise*, 146 Wn. App. at 781. But Harris makes no argument that the evidence he relies upon could not have been discovered before his guilty plea through the exercise of due diligence. Indeed, Harris's PRP relies upon either his own version of events or his counsel's recollection of a defense interview with the medical examiner approximately three months after Harris's guilty plea. Harris's own version of events was clearly known to him when he pleaded guilty. And there is no reason apparent from the record or argued by Harris that his counsel could not have earlier interviewed the medical examiner.

Harris fails to show that through the exercise of due diligence he could not have discovered the evidence upon which he relies before he pleaded guilty. *See Reise*, 146 Wn. App. at 781. Because he cannot satisfy the test for newly discovered evidence, we deny Harris's PRP.

In summary, we affirm Harris's convictions and sentence, and we deny his PRP.

_____
Worswick, P.J.

We concur:

_____
Bjorgen, J.

_____
Sutton, J.

16