150 P.3d 1116 (2007)
STATE of Washington, Respondent,
v.
Don Glen ECKENRODE, Petitioner.
No. 76100-1.
Supreme Court of Washington, En Banc.
Argued March 14, 2006.
Decided January 25, 2007.
Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Petitioner.
*1117 Gerald A. Horne, Alicia Marie Burton, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.
CHAMBERS, J.
¶ 1 In the "Hard Time for Armed Crime Act" of 1995, the people of the State of Washington recognized that "[a]rmed criminals pose an increasing and major threat to public safety and can turn any crime into serious injury or death." Laws of 1995, ch. 129, § 1(1)(a) (Initiative 159 (I-159)). Accordingly, under I-159, defendants who commit armed crimes generally receive enhanced sentences. Id.
¶ 2 Our constitution also guarantees the right to bear arms. Const. art. I, § 24. Over the years we have tried to harmonize both legal commands to ensure that people are not punished merely for exercising this constitutional right. To this end, to establish that a defendant was armed for purposes of the sentencing enhancement, the State must prove that a weapon was easily accessible and readily available for use and that there was a nexus or connection between the defendant, the crime, and the weapon. E.g., State v. Gurske, 155 Wash.2d 134, 138-39, 118 P.3d 333 (2005); State v. Barnes, 153 Wash.2d 378, 383, 103 P.3d 1219 (2005).
¶ 3 But we have not vacated sentencing enhancements merely because a jury was not instructed that there had to be such a nexus. There is another principle that bears on our review: whether any alleged instructional error could have been cured at trial. We have found that the defendant's failure to ask for the nexus instruction generally bars relief on review on the ground of instructional error. See, e.g., State v. Willis, 153 Wash.2d 366, 374, 103 P.3d 1213 (2005).
¶ 4 In this case, the defendant did not seek a nexus instruction. We have reviewed the record, and there was sufficient evidence to find a connection between the crime, the defendant, and the gun, and to find that the gun was readily available and easily accessible for offensive and defensive use. Accordingly, we affirm the imposition of the firearms enhancement.

FACTS
¶ 5 One afternoon, Pierce County 911 dispatch received a frantic call from Don Glen Eckenrode, reporting that an intruder was in his house. Eckenrode also alerted the dispatcher that he himself was armed and was prepared to shoot the intruder. Eckenrode then hung up on the dispatcher. Four well armed Pierce County Sheriff's Deputies responded within minutes. But by that time, Eckenrode and his housekeeper were sitting on lawn chairs in his front yard. Apparently confident that any danger had passed, Eckenrode was playing a video game.
¶ 6 The deputies swept the house for intruders. None were found, but deputies did notice what appeared to be methamphetamine, dried marijuana, a loaded rifle, an unloaded Ruger pistol, and the overwhelming smell of growing marijuana. On the strength of these observations, a warrant was obtained and the home was searched more vigorously. Among the many other signs of a marijuana growing operation scattered throughout the house, deputies found 55 marijuana plants in various stages of growth and a ledger appearing to record marijuana sales.
¶ 7 While still outside in his front yard, far from his weapons in the house, Eckenrode was arrested. He was later charged with manufacturing marijuana, unlawful possession of methamphetamine, and unlawful possession of marijuana with intent to deliver, all while armed with a firearm. Despite his testimony asserting unwitting possession, he was convicted by a jury of unlawful manufacture and possession of marijuana. The jury also found by special verdict that he was armed on both counts, subjecting him to sentencing enhancements. RCW 9.94A.533(3), (4), .602.
¶ 8 At the Court of Appeals, Eckenrode challenged the firearm enhancement instructions for the first time on the ground they did not explicitly require the jury to find a nexus between him, his weapon, and his crime. See State v. Eckenrode, noted at 117 Wash.App. 1086, 2003 WL 21744344, **6-7, 2003 Wash.App. LEXIS 1721, *22-24. The Court of Appeals reached the merits of his *1118 argument and found that the jury instructions, read as a whole, adequately conveyed the requirement that there be such a nexus and affirmed. Id., 2003 WL 21744344, *7, at *24. It affirmed again after an initial remand, State v. Eckenrode, noted at 123 Wash.App. 1013, 2004 WL 2725134 (2004), and we took review. State v. Eckenrode, 155 Wash.2d 1024, 126 P.3d 820 (2005).

ANALYSIS

A. FIREARMS ENHANCEMENTS
¶ 9 A person is potentially subject to a deadly weapons enhancement if armed while committing a crime. RCW 9.94A.533(3), (4), .602. Again, the legislative findings of the hard time for armed crime initiative specifically state that armed criminals were creating an increasing threat to public safety, turning any crime into one where serious injury or death to the victims, the public, or the police was a possibility. Laws of 1995, ch. 129, § 1(1)(a) (I-159); see also Gurske, 155 Wash.2d at 138-39, 118 P.3d 333.
¶ 10 The statutes relating to weapons enhancements do not define what it means to be armed. See RCW 9.94A.533, .602. After consideration we held that "[a] person is `armed' if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes." State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993); see also, generally, Jeffrey R. Kesselman, Excuse Me, Are You "Using" That Gun? The United States Supreme Court Examines 18 U.S.C. § 924(c)(1) in Bailey v. United States, 30 Creighton L.Rev. 513 (1997) (surveying "use" of a weapon in the context of the federal firearms enhancement). But a person is not armed merely by virtue of owning or even possessing a weapon; there must be some nexus between the defendant, the weapon, and the crime. Barnes, 153 Wash.2d at 383, 103 P.3d 1219; Valdobinos, 122 Wash.2d at 282, 858 P.2d 199.
¶ 11 Courts are especially careful in this area because of the constitutional right to bear arms. U.S. Const. amend. II; Const. art. I, § 24; see also State v. Rupe, 101 Wash.2d 664, 703-08, 683 P.2d 571 (1984) ("constitutionally protected behavior cannot be the basis of criminal punishment;" thus, courts must be protective of the right to bear arms during criminal trials implicating gun possession); State v. Johnson, 94 Wash.App. 882, 892-97, 974 P.2d 855 (1999) (inappropriate to send deadly weapon enhancement to the jury without some showing of both accessibility and nexus). But we are also mindful of the legislative purpose in creating the deadly weapons enhancement: to recognize that armed crime, including having weapons available to protect contraband, imposes particular risks of danger on society. Gurske, 155 Wash.2d at 138-39, 118 P.3d 333.
¶ 12 The lack of the word "nexus" does not render the generally used enhancement instructions per se inadequate. E.g., Willis, 153 Wash.2d at 374, 103 P.3d 1213. Because Eckenrode did not ask for such a nexus instruction, he is not entitled to seek relief on the ground of instructional error. When a defendant seeks such an instruction, it may well be appropriate to give it. See, e.g., id. But our primary task in this case is to determine whether the evidence was sufficient to uphold the jury's special verdict. As long as any rational trier of fact could have found that he was armed, viewing the evidence in the light most favorable to the State, sufficient evidence exists. State v. DeVries, 149 Wash.2d 842, 849, 72 P.3d 748 (2003); State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
¶ 13 We find there was sufficient evidence to uphold the jury's conclusion that a weapon was easily accessible and readily available. Eckenrode himself told the 911 operator that he had a loaded gun in his hand and that he was prepared to shoot an intruder.
¶ 14 There was also sufficient evidence of a connection between Eckenrode, the weapon, and his drug manufacturing operation to uphold the verdict. The rifle was loaded at the time, and Eckenrode testified that the pistol was as well. Eckenrode also had a police scanner, which together with his manufacturing operation raises the inference that he was monitoring police activity against the chance he might be raided. Finally, evidence of the drug manufacturing operation pervaded the house. A jury could readily have *1119 found that the weapons were there to protect the criminal enterprise. See State v. Simonson, 91 Wash.App. 874, 883, 960 P.2d 955 (1998) (holding that a nexus exists if the weapons were there to protect an active methamphetamine manufacturing operation).
¶ 15 Eckenrode asserts his case is on all fours with Gurske, where this court vacated a deadly weapons enhancement on the ground the State had not actually proved that the gun was easily accessible and readily available for use. But in Gurske, all the State proved was that the defendant possessed an inaccessible weapon. Gurske, 155 Wash.2d at 144, 118 P.3d 333. The State did not attempt to prove that the weapon found in Gurske was readily accessible at any relevant time or that there was any connection between the weapon and the crime. As we have said before, it is simply not enough to prove possession. Valdobinos, 122 Wash.2d at 282, 858 P.2d 199.
¶ 16 Nor is this case similar to Johnson, 94 Wash.App. 882, 974 P.2d 855. There, all the State proved was the mere presence of a weapon in the home of the defendant at the time drug crimes were committed. That is not sufficient; there has to be some facts presented that could lead a jury to infer that there was a connection between the defendant, the weapon, and the crime. Here, again, the evidence was sufficient for a judge to submit to, and for a rational jury to find, that connection. In this case, the defendant told the 911 operator he was holding a loaded weapon, a police scanner was found in the home, and there was pervasive evidence that much of the house was used for drug production.
¶ 17 Eckenrode argues that there was no direct evidence that any weapons were, in fact, there to protect any illicit business, as opposed to merely expressions of Eckenrode's quiet enjoyment of his article I, section 24 right to bear arms. But there is considerable circumstantial evidence that the weapons were there to protect the criminal enterprise and that they were readily accessible and available. "Some circumstantial evidence is very strong, as when you find a trout in the milk." Henry David Thoreau, Journal, Nov. 11, 1850, in Journal of Henry D. Thoreau 2:94 (Bradford Torrey & Francis H. Allen eds.1962) (quoted in The Oxford Dictionary of American Legal Quotations 133 (Fred R. Shapiro ed.1993)); see also Rogers Potato Serv., L.L.C. v. Countrywide Potato, L.L.C., 152 Wash.2d 387, 392, 97 P.3d 745 (2004) (noting that circumstantial evidence can support a judgment).
¶ 18 However, as much as there was sufficient evidence in this case, we agree with Eckenrode that it is conceivable that some defendants could be receiving firearms enhancements for possession of weapons that actually have nothing to do with any crime. The knives in the kitchen drawer or the hunting rifle on the wall might be readily and easily available but unconnected to any criminal enterprise, and courts should be careful to stay within the guidelines of RCW 9.94A.602[1] when instructing juries on what might qualify as a deadly weapon for purposes of weapons enhancements. While this is not the case before us, there may be situations where the jury instructions used would not allow the defendant to argue his or her theory of the case and thus be inadequate. Cf. Barnes, 153 Wash.2d at 382, 103 P.3d 1219; Willis, 153 Wash.2d at 374 n. 2, 103 P.3d 1213 ("This is not to say that including such language would be error. Depending on the facts of the case, such language might assist the jury in reaching its decision."). In some cases, it would be the better practice to specifically instruct the jury that the defendant is "armed" only if there is some nexus or connection between the defendant, the weapon, and the crime. This may be most important. See generally State v. Schelin, 147 Wash.2d 562, 576-77, 55 P.3d 632 (2002) (Alexander, C.J., concurring). The jury, as the trier of fact, is in the best position to determine whether there is a connection.
¶ 19 But, again, in a sufficiency of the evidence challenge, the burden is on the defendant to establish that the evidence was in *1120 fact insufficient, even with all inferences from the evidence drawn in favor of the State. Schelin, 147 Wash.2d at 573, 55 P.3d 632. Eckenrode has not met this burden. Accordingly, we affirm imposition of the firearms enhancement.

B. INCONSISTENT OPINIONS
¶ 20 Eckenrode also argues, essentially, that the Court of Appeals violated his equal protection, due process, and fair trial rights by affirming his conviction in an unpublished opinion despite the seemingly controlling precedent of an arguably contrary published opinion, State v. Holt, 119 Wash.App. 712, 82 P.3d 688 (2004) (overruled in part by State v. Easterlin, 126 Wash.App. 170, 107 P.3d 773 (2005)). Holt held that "nexus" language must appear in the jury instructions on the theory that otherwise, the State was relieved of its obligation to prove an essential element of the crime. Holt, 119 Wash.App. at 728, 82 P.3d 688 (citing State v. Eastmond, 129 Wash.2d 497, 503, 919 P.2d 577 (1996)) (effectively overruled by State v. Brown, 147 Wash.2d 330, 340, 58 P.3d 889 (2002)). But even assuming that the appellate court below committed an error, which it did not, Eckenrode cites no authority establishing that a court, acting as a court, violates a defendant's rights merely by making a mistake. His proper remedy is further appellate review, which he has received.

CONCLUSION
¶ 21 In order to harmonize the legitimate state interest in imposing enhanced sentences on those who commit armed crimes and the constitutional guaranty of the right to bear arms, the State must establish a connection between the defendant, the crime, and the weapon. The lack of the words "nexus" or "connection" does not per se render a weapons' enhancement instruction inadequate. We recognize that the jury may be in the best position to determine if there was the required connection, but Eckenrode failed to request the instruction he now complains was missing and gives us no reason to reach this issue.
¶ 22 Substantial evidence supports the jury's special verdict. Thus, we affirm imposition of the firearms enhancements.
WE CONCUR: CHARLES W. JOHNSON, SUSAN OWENS and BOBBE J. BRIDGE, Justices.
ALEXANDER, C.J. (concurring).
¶ 23 I agree with the result the majority reaches. I write simply to point out that the instruction that the defendant claims was insufficient is almost identical to the instruction we approved in State v. Willis, 153 Wash.2d 366, 103 P.3d 1213 (2005). Although I joined the dissent in Willis, believing that the Willis jury instruction did not adequately inform the jury that it must find a relationship between the defendant, the crime, and the weapon, that battle was lost when a majority of this court said that a nexus instruction was "not required." Id. at 374, 103 P.3d 1213. Although we did indicate in Willis that in some factual circumstances the inclusion of nexus language in a jury instruction would not be error and "might assist the jury in reaching its decision," id. at 374 n. 2, 103 P.3d 1213, no nexus instruction was requested by Eckenrode. I, therefore, see no reason to discuss the issue.
I CONCUR: MARY E. FAIRHURST, Justice.
MADSEN, J. (concurring).
¶ 24 The State sought a sentence enhancement because it alleged that Mr. Eckenrode was armed at the time he committed his crimes. Accordingly, the jury was instructed that the State was required to prove beyond a reasonable doubt that "`the defendant was armed with a firearm at the time of the commission of the crime'" and that the defendant was "armed" if the defendant had "`a weapon which [was] easily accessible and readily available for use, either for offensive or defensive purposes'" at the time of the commission of the crime. State v. Eckenrode, noted at 117 Wash.App. 1086, 2003 WL 21744344, *6, 2003 Wash.App. LEXIS 1721, *23 (emphasis omitted) (quoting Clerk's Papers at 113, 115, 116).
*1121 ¶ 25 Eckenrode has not challenged the constitutionality of these instructions, probably because the concept of "nexus" or "connection" between the defendant, the crime, and the weapon is adequately conveyed by the instructions even though the instructions do not use the word "nexus." In other words, the instructions here required that the jury find beyond a reasonable doubt that Eckenrode (the defendant) possessed a weapon that was easily accessible and readily available for use (the weapon) "at the time of the commission of the crime" (the crime).
¶ 26 Some members of the court continue to voice concern over the absence of the word "nexus" from the armed crime instruction. However, no one has explained how an instruction stating that the State must prove "beyond a reasonable doubt that there is a nexus between the defendant, the weapon, and the crime" will bring additional clarity. The clarity sought by some members of the court could only be reached by limiting the enhancement to those circumstances where the defendant actually uses the weapon. However, a majority of the court agrees that a defendant can be "armed" even if the weapon is not used, or even handled, during the commission of the crime. That being the case, while there will always be room for disagreement as to whether a defendant is "armed" in the particular case, this court has concluded that whether a defendant was armed must be resolved by evaluating whether sufficient evidence was presented on the question under instructions that we have repeatedly approved. Although I agree with the result reached by the majority, I am at a loss to understand the point of the continuing debate.
J.M. JOHNSON, J. (concurring).
¶ 27 I concur in the majority's reasoning and result in this case. However, I write separately to express concern over the state of the law regarding the meaning of "armed" and the nexus requirement connecting a firearm with a crime. Our cases fail to establish clear standards, and many of the opinions from this court on these issues may overlook a basic Washington constitutional right. Since the right of the individual citizen to bear arms is constitutionally guaranteed in article I, section 24, any regulation or penalty where a firearm is a factor must be carefully crafted. Because our case law regarding what it means to be "armed" is confusing, our juries (and trial courts) are often left to struggle with potentially incomplete jury instructions. This vagueness is unacceptable when dealing with such a constitutionally protected area. However, this case is not the appropriate vehicle in which to resolve these issues because the defendant did not challenge the instructions or request a nexus jury instruction. Thus, I concur.
I CONCUR: RICHARD B. SANDERS, Justice.
NOTES
[1] "[A] deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death."