FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 28

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45101-8-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| SOPHIA F. THOMAS, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury found Sophia Thomas guilty of three counts of possession of a controlled substance, one count of possession of a controlled substance with intent to deliver, and one count of money laundering. The jury also found that Thomas or her accomplice was armed with a firearm during two of these offenses. Thomas now appeals, claiming that insufficient evidence supports (1) the jury's guilty verdict for possession with intent to deliver, (2) the jury's guilty verdict for money laundering, and (3) the jury's findings that Thomas or her accomplice was armed with a firearm. In a pro se statement of additional grounds, Thomas also contends that she received ineffective assistance of counsel and that juror misconduct tainted her trial.

Permissible inferences drawn from evidence presented by the State allowed a rational jury to find that the State had proven beyond a reasonable doubt that (1) Thomas was an accomplice to the possession with intent to deliver offense, (2) Thomas committed money laundering, and (3) Thomas or her accomplice was armed with a firearm while committing two offenses. To the extent that Thomas bases her SAG arguments on the trial record, they do not show any error. To the extent that Thomas's SAG relies on matters outside the record, we decline to address them in her direct appeal. We affirm Thomas's convictions and the firearm enhancements.

## FACTS

Sometime in late 2011 or early 2012, the Pierce County Sheriff's Department began investigating Kenneth Criswell for trafficking narcotics. The investigators turned their interest to Thomas when officers noticed Criswell arriving at several controlled drug sales while driving her cars. Investigators also discovered that in December 2011 and January 2012, just after she began dating Criswell, Thomas made several large cash deposits and immediate withdrawals at her credit union.

Through surveillance of Criswell, police determined that he spent a "majority of time" at Thomas's house, although he maintained a separate apartment. II Verbatim Report of Proceedings (VRP) at 129-31, 133. Accordingly, police served a search warrant on Thomas's house early one morning in February 2012. Officers found Thomas and Criswell asleep in the upstairs bedroom and took both into custody.

In the bedroom where they arrested Thomas and Criswell, police found a loaded pistol, hydrocodone pills, and $3,500 in cash. The pistol was hanging from the bed's headboard, and the hydrocodone was in Thomas's purse. The purse also contained the cash, stuffed inside an

envelope. Writing on the envelope appeared to detail Criswell's sale of controlled substances, recording the names of buyers, the quantity of drugs sold to each, and the cash value of the transactions.

A search of the house yielded two additional firearms, other drugs, and items linked to trafficking in drugs. Police found one of the guns, a loaded assault rifle, behind window drapes in Thomas's living room. The rifle was placed so that it was "grabable" without moving any furniture. III VRP at 179. Police found another loaded handgun on the passenger seat of one of Thomas's cars, which was parked in her garage. The search also turned up 29 grams of cocaine in a bag on Thomas's kitchen counter, along with a digital scale, and oxycodone and oxymorphone pills in Thomas's kitchen. Finally, in one of the house's closets, an officer found an electronic currency counter.

The State charged Thomas with four counts of possession of a controlled substance with intent to deliver in violation of RCW 69.50.401(1)(2)(a), (c), and one count of money laundering in violation of RCW 9A.83.010(7) and RCW 9A.83.020(1).[1] The State alleged that Thomas or

---

[1] RCW 69.50.401(1) provides that "[e]xcept as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(2) prescribes that a violation of RCW 69.50.401(1) is either a class B or class C felony depending on the controlled substance involved.

RCW 9A.83.020(1) provides, in relevant part, that
> [a] person is guilty of money laundering when that person conducts or attempts to conduct a financial transaction involving the proceeds of specified unlawful activity and:
> (a) [k]nows the property is proceeds of specified unlawful activity; or
> (b) [k]nows that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds, and acts recklessly as to whether the property is proceeds of specified unlawful activity.

an accomplice was armed with a firearm during the commission of each of the possession with intent to deliver offenses.[2]

At trial, the State presented evidence connecting Thomas to drug possession and trafficking. Police officers testified about their search of Thomas's house and their seizure of controlled substances and other paraphernalia, including the cocaine, oxymorphone, and oxycodone found in her kitchen; the hydrocodone and the envelope of cash with drug transactions written on it found in her purse in her bedroom; and the digital scale and currency counter. Officers testified that the digital scale, currency counter, and the notations on the envelope in Thomas's purse were hallmarks of the drug trade. Officers also testified that the volume of drugs found in Thomas's home were not the small quantities associated with personal use.

The manager of security risk who oversaw the fraud and investigations group at Thomas's credit union testified about three suspicious transactions Thomas had made in December 2011 and January 2012, just after she began dating Criswell. In the first, Thomas deposited $9,055 in small denomination bills and immediately withdrew the same amount in large denomination bills. In the second, Thomas again deposited $9,000 in small bills and then immediately withdrew the same amount in large denomination bills. In the third, Thomas deposited $1,250 in small bills and immediately withdrew the same amount in large bills. Thomas had never made transactions like these before the first December 2011 deposit. A Pierce

---

[2] RCW 9.94A.533 provides that certain additional time "shall be added to the standard sentence range for felony crimes . . . if the offender or an accomplice was armed with a firearm . . . and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements." Possession of a controlled substance with intent to deliver and possession of a controlled substance are crimes eligible for an enhanced sentence under RCW 9.94A.533. RCW 9.94A.533(f); RCW 69.50.401(2).

County sheriff testified that drug sales typically involved smaller denomination bills, usually "[$10s] and $20s," II VRP at 124-25, the types of bills Thomas deposited.[3] Another Pierce County sheriff's detective testified that Thomas reacted oddly when asked, after her arrest, if the deposits involved cash from Criswell.

Finally, testimony at trial connected Thomas and Criswell to several firearms. Officers described finding the loaded pistols in Thomas's master bedroom and car and the assault rifle behind the curtains in her living room while searching her house.

Thomas testified in her defense. She denied knowing that Criswell dealt drugs, kept drugs in her house, or kept firearms there. Thomas explained that Criswell could have used her cars without her knowledge because he had access to her house and her spare keys. Thomas also testified that Criswell had put the hydrocodone and cash in her purse the night before their arrest without her knowledge.

Thomas explained that each of the large cash deposits involved in the money laundering charges were unconnected to Criswell or drug trafficking. She stated that the first consisted of funds sent to her by family members to care for a sick uncle and to pay for funeral expenses. She explained the exchange of small for large bills as necessary to get the type of cash her culture required her family to give to people attending her uncle's funeral. Thomas claimed that the second deposit consisted of a collection of the cash tips she earned at her second job, which she exchanged for large bills for a trip to Las Vegas. She testified that the third cash deposit was rental income from her second home.

---

[3] The security risk manager testified that, in the first transaction, Thomas exchanged over 400 $20 bills, a "couple of tens and a couple fives" for "[p]rimarily hundred dollar bills." III VRP at 240. The second transaction also involved the deposit of "over 400 $20 bills." III VRP at 241.

Criswell also testified for Thomas. He agreed that Thomas did not know he dealt drugs or that he kept drugs at her house. Criswell admitted that he had sold drugs at a bar the night before his and Thomas's arrest, and that he had put the proceeds of those sales, as well as the hydrocodone pills, in Thomas's purse without her knowledge because he could not hide the drugs on his person. Criswell also testified that he owned the guns police found in Thomas's house, that Thomas did not know about them because he hid them, and that he kept the guns because of post-traumatic stress related to his military service, not because he used them in the course of his drug operations.

Other defense witnesses testified that Thomas earned large volumes of small bills as tips at her second job. Thomas's sister verified Thomas's claims that their culture required giving cash gifts to those attending their uncle's funeral and that Thomas was the caretaker of the funds given by family members for the uncle's care and funeral.

After the parties presented their evidence, the trial court instructed the jury on the State's burden of proof, the elements of the offenses, and the firearm enhancements. The trial court also instructed the jury on accomplice liability, on its ability to convict Thomas as a principal or an accomplice, and on the affirmative defense of unwitting possession.

The jury found Thomas guilty of three counts of possession of a controlled substance for possessing the cocaine, oxymorphone, and oxycodone; possession of a controlled substance with intent to deliver for the possession of the hydrocodone; and money laundering. The jury returned special verdicts finding that Thomas or an accomplice was armed with a firearm while possessing the cocaine and possessing the hydrocodone with intent to deliver.

Thomas now appeals.

6

## ANALYSIS

### I. STANDARD OF REVIEW

The due process clauses of the state and federal constitutions "require[] [that] a criminal defendant be convicted only when every element of the charged crime is proved beyond a reasonable doubt." *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). We review whether sufficient evidence supports the convictions by examining whether, when viewed in the light most favorable to the prosecution, the State's evidence permits a rational trier of fact to find the essential elements of the charged crime beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

We apply similar principles to a jury's finding that a defendant was armed with a firearm during the commission of a crime. We review whether, when viewed in the light most favorable to the State, the evidence allowed a rational trier of fact to find that the defendant was armed with a firearm during the commission of an offense. *State v. Eckenrode*, 159 Wn.2d 488, 494, 150 P.3d 1116 (2007).

By challenging the sufficiency of the State's evidence, Thomas "'admits the truth'" of that evidence "'and all inferences that reasonably can be drawn therefrom.'" *Kintz*, 169 Wn.2d at 551 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We do not distinguish between direct and circumstantial evidence: both "'are equally reliable'" in providing evidence sufficient to sustain a jury's guilty verdict. *Kintz*, 169 Wn.2d at 551 (quoting *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)). On review, we defer to the jury's credibility determinations and resolution of conflicting testimony. *State v. McCreven*, 170 Wn. App. 444, 477, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013).

## II. SUFFICIENCY OF THE EVIDENCE UNDERLYING THE CRIMINAL CONVICTIONS

On appeal, Thomas challenges the sufficiency of the evidence underlying her convictions for possession of a controlled substance with intent to deliver and money laundering. Thomas also challenges the sufficiency of the evidence underlying the findings that she or an accomplice was armed with a firearm while committing two of the offenses. The State contends that sufficient evidence supports the jury's finding in each respect. We agree with the State.

### A. Possession with Intent

Thomas first argues that insufficient evidence supports the conviction for possession with intent to deliver, claiming that the State failed to show she acted as an accomplice to Criswell's hydrocodone sales. Thomas maintains that the State's evidence, "at most," showed Thomas "kn[ew]" of Criswell's illegal activities and "assent[ed]" to them, which is insufficient for accomplice liability. Br. of Appellant at 14. The State contends that the jury could rationally have found that Thomas agreed to participate in Criswell's criminal activities and was therefore his accomplice.

Under Washington's complicity statute, "[a] person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable." RCW 9A.08.020(1). A person is "legally accountable for the conduct of another person," among other circumstances, if "[h]e or she is an accomplice of such other person in the commission of the crime." RCW 9A.08.020(2)(c). One of the ways a person may become an accomplice to another person's commission of a crime is by "[a]id[ing] or agree[ing] to aid such other person in planning or committing" the crime "[w]ith knowledge that it will promote or facilitate the commission of the crime." RCW 9A.08.020(3)(a)(ii).

8

A person's mere presence at the scene of a crime and assent to its commission does not make the person an accomplice to the crime. *In re Welfare of Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979) (quoting *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 593, 512 P.2d 1049 (1973)). Instead, to become an accomplice, a person must "'associate[] himself [or herself] with the undertaking [and] participate[] in it as in something he [or she] desires to bring about, and seeks by his [or her] action to make it succeed.'" *Wilson*, 91 Wn.2d at 491 (quoting *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 593, 512 P.2d 1049 (1973)).

The jury could rationally have found that these requirements of complicity were met, because the evidence allowed it (1) to infer that Thomas knew any aid would facilitate Criswell's possession of a controlled substance with intent to deliver and (2) to find that Thomas gave Criswell aid. First, the jury could rationally find beyond a reasonable doubt that Thomas knew her activities would promote or facilitate Criswell's possession of the hydrocodone with intent to deliver. Criswell testified that he put the drugs in Thomas's purse because he had so many of them that he could not hide them on his person. The jury saw evidence of the volume of pills involved. From this evidence the jury could reasonably infer that Thomas must have known why Criswell had put the drugs in her purse and that by carrying them for him she would promote or facilitate his possession of the hydrocodone with intent to deliver.

This jury could also find beyond a reasonable doubt that Thomas aided Criswell in his hydrocodone sales. Thomas carried Criswell's hydrocodone away from the bar where he sold drugs the evening before their arrest. As noted, above, Criswell placed the drugs in Thomas's purse because he could not successfully hide them on himself and he did not want to "get caught with [them]." IV VRP at 362. At the time of her arrest, Thomas was still in constructive possession of the drugs, which were still in her purse, inside her house, inside her bedroom, near

where she lay sleeping when police found her.[4] Carrying and hiding Criswell's drugs falls within the meaning of "aid" in the accomplice liability statute. RCW 9A.08.020.

Thomas analogizes her conviction to one reversed by Division One of our court in *State v. Amezola*, 49 Wn. App. 78, 741 P.2d 1024 (1987), *overruled on other grounds by State v. MacDonald*, 138 Wn.2d 680, 689, 981 P.2d 443 (1999), and asks that we reverse her conviction as well. The appellant in *Amezola*, Ramirez, had lived with her alleged accomplices; the State presented evidence that she cooked and cleaned their shared residence. The State argued that Ramirez's cooking and cleaning enabled her housemates to engage in the delivery of heroin, making her an accomplice in their criminal enterprise. 49 Wn. App. at 89. Division One rejected the argument, holding that Ramirez's housework was legally insufficient to show that she had associated herself with her housemate's illegal activities, thereby making her their accomplice. *Amezola*, 49 Wn. App. at 89-90.

Any analogy to *Amezola* fails. Unlike Ramirez, Thomas actively engaged in activity related to Criswell's drug sales, not just routine domestic tasks unconnected to illegal activities. By doing so, Thomas associated with and aided Criswell's criminal enterprise and became his accomplice. *Wilson*, 91 Wn.2d at 491 (quoting *J-R Distribs., Inc.*, 82 Wn.2d at 593).

B. Money Laundering

Thomas also contends that the State failed to present sufficient evidence that she engaged in money laundering by depositing the proceeds of Criswell's illicit drug sales. She contends that she "was receiving significant amounts of cash from legitimate sources" and that the State

---

[4] Actual possession involves "physical custody of" an object; constructive possession involves "dominion and control over the object." *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Dominion and control means that the defendant may reduce the object "to actual possession immediately." *Jones*, 146 Wn.2d at 333.

10

failed to prove she knowingly deposited the proceeds of Criswell's drug sales. Br. of Appellant at 21.

The crime of money laundering is defined in RCW 9A.83.020, which provides, in relevant part, that

> (1) A person is guilty of money laundering when that person conducts or attempts to conduct a financial transaction involving the proceeds of specified unlawful activity and:
> (a) Knows the property is proceeds of specified unlawful activity; or
> (b) Knows that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds, and acts recklessly as to whether the property is proceeds of specified unlawful activity.

The possession of a controlled substance with intent to deliver is "[s]pecified unlawful activity" within the meaning of RCW 9A.83.020. RCW 9A.83.010(7); RCW 9A.82.010(4)(q).

Here, the State presented evidence that Thomas had not engaged in suspicious transactions before she began dating Criswell. Shortly after the two met, however, she engaged in three such transactions. In each of these transactions, Thomas deposited large numbers of small denomination bills, the type that police testified were generated by drug sales, and then immediately withdrew an amount of money equivalent to the deposit in large denomination bills. The jury also heard that, at the time of her arrest, Thomas's purse contained an envelope filled with the proceeds of Criswell's drug sales. When viewing this evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Thomas engaged in a continuing money laundering scheme that ended only with her arrest while in constructive possession of Criswell's drug money.

Thomas contends also that her exculpatory explanations for the transactions create reasonable doubt. We, however, are not the jury. "An essential function of the fact finder is to discount theories which it determines unreasonable," *State v. Bencivenga*, 137 Wn.2d 703, 709,

11

974 P.2d 832 (1999), and the jury did so here. By Thomas's own explanations, the second and third deposits were the type of recurring event that should have occurred before she met Criswell. The jury could readily infer from the lack of previous, similar deposits that Thomas's explanations were not truthful, and we defer to that determination. *McCreven*, 170 Wn. App. at 477.

### III. SUFFICIENCY OF THE EVIDENCE UNDERLYING THE FIREARM SPECIAL VERDICTS

Thomas next argues that insufficient evidence supports the jury's finding that she or an accomplice was armed with a firearm while possessing the cocaine or hydrocodone. Specifically, Thomas contends that the State's evidence did not establish a nexus between herself or Criswell, the firearms, and the drugs. We hold that the evidence was sufficient to sustain the firearm finding.

Washington has proscribed the constitutionally unprotected use of firearms to commit crimes. *State v. Schelin*, 147 Wn.2d 562, 575, 55 P.3d 632 (2002) (lead opinion of Ireland, J.) (no constitutional protection for criminal use of a firearm); RCW 9.94A.533(3) (enhanced sentence for offenders armed with a firearm during the commission of a crime). Accordingly, the State may seek a finding that "the offender or an accomplice was armed with a firearm" during the commission of an offense. RCW 9.94A.533(3); RCW 9.94A.825. If a jury makes the finding, the trial court must add statutorily prescribed time to the offender's sentence. RCW 9.94A.533(3).

A person is armed during the commission of a crime "if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes." *State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993). These purposes include using the weapon "to facilitate the commission of the crime, escape from the scene of the crime, protect contraband or the like,

12

or prevent investigation, discovery, or apprehension by the police." *State v. Gurske*, 155 Wn.2d 134, 139, 118 P.3d 333 (2005). In constructive possession cases such as this, the State must show both a nexus between the defendant and the firearm and between the firearm and the crime. *Gurske*, 155 Wn.2d at 140-42. To determine whether these connections exist, the factfinder must look to "'the nature of the crime, the type of weapon, and the circumstances under which the weapon was found.'" *Gurske*, 155 Wn.2d at 142 (quoting *Schelin*, 147 Wn.2d at 570).

The State's evidence allowed a rational jury to find beyond a reasonable doubt a nexus between the defendant and a firearm. Police discovered a loaded pistol on the headboard of the bed where they had just arrested Thomas and Criswell after finding them asleep. Thomas's and Criswell's constructive possession of the pistol establishes a nexus between each of them and the firearm. *Schelin*, 147 Wn.2d 574-75 (proximity to firearm at time of arrest for ongoing drug operation satisfies nexus test); *State v. Taylor*, 74 Wn. App. 111, 124-26, 872 P.2d 53 (1994) (affirming firearm enhancement because defendant was in constructive possession of firearm during arrest for drug offenses); *State v. Sabala*, 44 Wn. App. 444, 447-49, 723 P.2d 5 (1986) (same); *cf. State v. Mills*, 80 Wn. App. 231, 907 P.2d 316 (1995) (no nexus where the defendant is not in physical proximity to the firearm).[5]

The State's evidence also allowed a rational jury to find beyond a reasonable doubt that a nexus existed between the firearm recovered in the bedroom and the possession of the hydrocodone and cocaine for several reasons.

---

[5] *Taylor* and *Sabala* were decided before the Supreme Court adopted the nexus requirement, but the Supreme Court has stated that *Sabala* is "instructive because there was clearly a nexus between the defendant and the weapon." *Gurske*, 155 Wn.2d at 142. This same reasoning would apply to *Taylor* as well. *See Taylor*, 74 Wn. App. at 125 ("the gun was sitting on a table next to the couch where Taylor was sitting and was easily accessible to him.").

First, with regard to only the hydrocodone, the State's evidence shows that Thomas and Criswell kept the pistol in the same room as the drug. The hydrocodone and the firearm were thus in close proximity to each other, and this proximity establishes a nexus between the two. *Schelin*, 147 Wn.2d at 564, 574-75;[6] *see Mills*, 80 Wn. App. at 236. The jury could rationally have inferred that Criswell kept the gun in the same room as the hydrocodone in order to protect the contraband or to thwart law enforcement officers coming to search the room.

Second, the extensive evidence of the drug operation recovered in Thomas's house allowed the jury to infer Thomas or Criswell was armed in the commission of possession of the cocaine and hydrocodone. Where evidence of the drug trade "pervade[s] [a] house," the jury may rationally infer that firearms recovered in the house "[are] there to protect the criminal enterprise." *Eckenrode*, 159 Wn.2d at 494, 497-99 (Alexander, C.J. concurring) (Madsen, J. concurring); *see State v. Simonson*, 91 Wn. App. 874, 883, 960 P.2d 955 (1998). As noted, police found various types of drugs in various places in Thomas's kitchen and bedroom and other items of paraphernalia associated with drug dealing in the house. The evidence of a large drug operation in Thomas's house allowed the jury to infer that Thomas or Criswell kept firearms there to protect the operation.

Third, the locations of the weapons in the house allowed the jury to infer that each was used in the drug operation. The firearms were in strategic positions for use in a drug operation. The pistol in the bedroom was available to protect both Thomas and Criswell and the drugs, to thwart investigators, and to aid in flight from arrest. The assault rifle in the living room, a

---

[6] Although the lead opinion of *Schelin* did not command a majority, the *Gurske* court used *Schelin* as an example where there was a nexus between the defendant, crime, and firearm because police arrested the defendant in close proximity to the firearm and the drug operation. 155 Wn.2d at 140.

readily "grabable" large capacity weapon, III VRP at 179, was available to thwart attempts by law enforcement or any intruder to force entry through the house's main door; and the pistol in the car was available to aid in flight from the house. *See Gurske*, 155 Wn.2d at 139 (listing possible uses for a firearm in a drug operation). The jury could infer from the strategic positioning of each of these firearms that all were used for specific purposes related to the drug operations, and that a nexus therefore existed between each of them and Thomas and Criswell's possessory crimes.

## IV. STATEMENT OF ADDITIONAL GROUNDS (SAG) ARGUMENTS

In her SAG, Thomas contends that her trial counsel provided ineffective assistance by failing to communicate the State's plea offers, failing to advise her of her right to a bench trial, and failing to prepare for trial. Thomas also asserts that a biased juror tainted her trial. Thomas's claims about communication of the State's offer and the biased juror concern matters discussed in the record, and we address and reject them below. Thomas's other claims require consideration of evidence not in the trial record and we do not address them on direct appeal; Thomas must instead seek relief with a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

### A.     Ineffective Assistance

Both the state and federal constitutions guarantee criminal defendants the right to effective representation by their counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance claims de novo using the federal test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Cienfuegos*, 144 Wn.2d 222, 226, 25 P.3d 1011 (2011). To obtain relief under *Strickland*, the defendant must show that counsel performed deficiently and that this deficient performance

prejudiced her or him. *Strickland*, 466 U.S. at 687. We may reject an ineffective assistance claim where the defendant fails to make the necessary showing on either prong. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

With regard to her claim that her counsel failed to apprise her of the State's acceptance of her plea offer, we find no deficient performance because the record is contrary to Thomas's claim. The sentencing colloquy shows that she rejected the best plea offer that the State would make. The State did not accept her counter offer and there was nothing for her counsel to communicate to her, meaning her counsel did not perform deficiently.

B.      Right to An Impartial Jury

The state and federal constitutions also protect the right to trial by an impartial jury. *State v. Davis*, 141 Wn.2d 798, 824, 10 P.3d 977 (2000). Based on this right, a party may challenge the seating of a potential juror for cause where he or she has shown actual bias. RCW 4.44.130, .170(2), .190.

Thomas's claims of juror bias fail on the record before us. At sentencing, her attorney did state that one of the jurors appeared to have known Thomas. But Thomas's attorney specifically stated that the juror appeared to harbor no bias against Thomas. Thomas therefore cannot show a violation of her right to an impartial jury. RCW 4.44.190 (right to challenge a juror for cause requires actual bias).[7]

---

[7] If Thomas does have evidence that the juror harbored bias, it exists outside the trial record and, again, she must seek relief through a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

## CONCLUSION

We hold that sufficient evidence supported the jury's finding that Thomas was guilty of possession of a controlled substance with intent to deliver and money laundering and that Thomas or an accomplice was armed with a firearm while possessing the cocaine and hydrocodone with intent to deliver it. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

WORSWICK, J.

MELNICK, J.