# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47002-1-II |
| Respondent, | |
| v. | |
| SUSAN ANN CHRISTOPHER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Susan Ann Christopher appeals her conviction and sentence of possession of methamphetamine with intent to manufacture or deliver while armed with a firearm, arguing that (1) the State did not prove that she was armed, (2) the State committed prosecutorial misconduct during closing arguments, and (3) the trial court erred by ordering forfeiture of all property without statutory authority. In a statement of additional grounds (SAG), Christopher argues that her right to a speedy trial was violated because the State misused CrRLJ 3.2.1 to file this criminal case against her. The State concedes that the trial court erred by ordering forfeiture. We accept the State's concession, but hold that the remainder of Christopher's arguments fail. Thus, we affirm her conviction and sentence, but we vacate the forfeiture order.

## FACTS

The Kitsap County Sheriff's Department used a confidential informant (CI) to investigate Christopher for selling methamphetamine. Working with law enforcement, primarily Detective Michael Grant, the CI executed three controlled buys with Christopher.[1]

---

[1] A controlled buy is when an informant, with the help and supervision of law enforcement, buys illegal contraband. In this case, law enforcement provides the informant with money allocated for

The State charged Christopher by amended information with two counts of delivery of methamphetamine[2] (counts I and II); one count of delivery of methamphetamine,[3] with a firearm sentencing enhancement[4] (count III); one count of possession of methamphetamine with intent to manufacture or deliver,[5] with a firearm sentencing enhancement[6] (count IV); and two counts of possession of a controlled substance[7] (counts V and VI).[8] At trial, law enforcement officers and the CI testified to the following facts.

The CI testified that she "always went into [Christopher's] room to purchase the [methamphetamine] no matter what." 2 Verbatim Report of Proceedings (VRP) at 190. The CI also testified that when she and Christopher went into the bedroom, she either "put the money on the bed" or gave it to Christopher directly. 2 VRP at 191.

Following the third controlled buy, officers obtained and executed a search warrant for Christopher's residence. In searching Christopher's bedroom, a "very visible" rifle was "standing

---

drug investigations, and meets with and searches the informant before and after the drug deal. Law enforcement then enters into evidence the drugs purchased by the informant. Some controlled buys use a video camera.

[2]RCW 69.50.401.

[3] RCW 69.50.401.

[4] RCW 9.94A.825.

[5]RCW 69.50.401.

[6] RCW 9.94A.825.

[7] RCW 69.50.4013.

[8] Count IV is the only count at issue here.

up to the right side of the entry to the door. Just inside the room." 2 VRP at 248-49. Ammunition for the rifle on a dresser was found "just inside the door." 3 VRP at 268. Officers also found a Beretta 9 mm pistol and ammunition piled on a suitcase at the foot of the bed. The 9 mm pistol was not loaded.

On Christopher's bed, officers found a case containing, among other things, a digital scale, two small cups, a small scoop with white powdery substance, and a small book. The book contained records of "purchase costs, cash cost and front cost of various quantities of drugs." 3 VRP at 288. The book was consistent with drug ledger notes. As a whole, the case looked "like a portable kit for selling drugs." 3 VRP at 287. Additionally, the case contained small plastic bags with various pills and labels, and two small bags of "a white crystal-type substance," consistent with methamphetamine. 3 VRP at 301.

Officers also found two safes stacked in Christopher's bedroom. The bottom safe was unlocked, and contained a digital scale, paperwork, and a loaded .357 magnum pistol. A monitor "displaying surveillance cameras that were installed on the exterior of the house" sat on top of the safes. 3 VRP at 412. It is common to see similar surveillance systems in homes that police "encounter for drug investigations" for the homeowner to be alerted if police arrive or a potential theft. 3 VRP at 412. Also, drug dealers often use firearms "to protect themselves from other drug dealers or people that are buying drugs from them . . . to protect their own product, their own money." 3 VRP at 423.

Detective Grant testified that drug dealers may use a weapon during a controlled buy "to discourage someone from attempting to rip them off or steal their money or steal their drugs." 3

VRP at 313. Detective Grant also testified that he performed test fires with the .22 rifle, the Beretta 9 mm, and the .357 Magnum. Detective Grant concluded that the three firearms were functional.

During closing arguments, the prosecutor argued that

"armed" means that there's a firearm that is easily accessible and readily available. Basically it's close-by and it's not locked up. You'll notice in the definition it doesn't say it has to be loaded, though at least in Count 4 on the possession with intent, each of those firearms was actually loaded.

5 VRP at 624. Christopher did not object.

The jury found Christopher guilty of all counts. The jury also found by special verdict that Christopher was armed with a firearm for the crime possession of methamphetamine with intent to manufacture or deliver (count IV). The trial court sentenced Christopher to 72 months in confinement and ordered Christopher to "[f]orfeit all seized property referenced in the discovery to the originating law enforcement agency unless otherwise stated." Clerk's Papers (CP) at 89. Christopher appeals.

ANALYSIS

A.    SUFFICIENT EVIDENCE FOR FIREARM ENHANCEMENT

Christopher argues that the State failed to prove that she was armed with a firearm during the commission of the crime of possession of methamphetamine with intent to manufacture or deliver (count IV).[9] We disagree.

---

[9] We note that Christopher repeatedly misrepresents the record. For example, Christopher argues that Detective Grant "testified that the rifle was so dirty that he could not use a magazine for it but had to manually load an individual bullet to conduct the test fire at the range." Br. of Appellant at 6. Detective Grant testified that that when he test fired the rifle, he "had to manually load it" because "it didn't have the magazine in it," and that police do not package the weapon and the magazine together. 3 VRP at 305. Detective Grant also testified that he had trouble manually

4

We review sufficiency of the evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences drawn from it. *Salinas*, 119 Wn.2d at 201. We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

"A person is 'armed' if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes." *State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993); *accord State v. Neff*, 163 Wn.2d 453, 462, 181 P.3d 819 (2008) ("This potential use may be offensive or defensive and may be to facilitate the crime's commission, to escape the scene, or to protect contraband."). "But a person is not armed merely by virtue of owning or even possessing a weapon; there must be some nexus between the defendant, the weapon, and the crime." *State v. Eckenrode*, 159 Wn.2d 488, 493, 150 P.3d 1116 (2007). To apply the nexus requirement, we look to the "nature of the crime, the type of weapon, and the circumstances under which the weapon is found." *State v. Schelin*, 147 Wn.2d 562, 570, 55 P.3d 632 (2002).

In *Neff*, law enforcement discovered a methamphetamine manufacturing laboratory in the defendant's garage. *Neff*, 163 Wn.2d at 457. In the garage, law enforcement found three handguns: two handguns were loaded and in a locked safe that also contained other controlled substances, and one was "in a tool belt hanging from the garage rafters." *Id.* Law enforcement

---

loading the rifle, but that he "couldn't tell if it was because the firearm is particularly dirty or the fact that the magazine wasn't seated in it." 3 VRP at 306.

also found a monitor streaming surveillance footage from cameras on the defendant's property. *Id.* at 457. The State charged Neff with, and Neff was convicted of, manufacturing methamphetamine, along with a firearm enhancement. *Id.* at 457-58. On appeal, Neff claimed that insufficient evidence supported the firearm enhancement. *Id.* at 461. The court held that the three firearms, other controlled substances, and security monitors were sufficient for a rational person to find beyond a reasonable doubt that the defendant was armed and used the firearms to defend his drug operation. *Id.* at 464-65.

Here, the evidence showed that the CI always purchased methamphetamine in Christopher's bedroom and that three guns, surveillance monitors, and drugs were found in the bedroom. Based on the evidence, a rational fact finder could find beyond a reasonable doubt that Christopher was armed while in possession of methamphetamine with intent to manufacture or deliver (count IV). Thus, sufficient evidence supports the finding that Christopher was armed with a firearm at the time she committed the crime of possession of methamphetamine with intent to manufacture or deliver.

Christopher also argues that because she was not arrested in the bedroom with the drugs or near a loaded gun, the State failed to establish the required nexus between the weapons and the charge of possession with intent to deliver. Her claim fails because the defendant does not have to be armed at the time of the arrest for purposes of the firearm enhancement. *State v. O'Neal*, 159 Wn.2d 500, 504, 150 P.3d 1121 (2007) ("The defendant does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement.").

Christopher further contends that "there was insufficient evidence to establish that either weapon was loaded." Br. of Appellant at 6. The evidence, however, showed that the .357 magnum pistol found in the unlocked safe was loaded. Thus, Christopher's insufficiency challenge fails.

B.      PROSECUTORIAL MISCONDUCT

Christopher argues that "the prosecutor committed prejudical, flagrant and ill-intentioned misconduct" during closing arguments when he misstated the facts by arguing that all three guns were loaded.[10] Br. of Appellant at 8. We disagree.

To prevail on a claim of prosecutorial misconduct, Christopher must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). When a defendant fails to object to alleged misconduct, she waives the error unless she can show that the misconduct was so flagrant and ill-intentioned that no instruction could cure the prejudice, and that the prejudice had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 760-61. The prosecutor's conduct is considered in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). The defendant establishes prejudice when the misconduct had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 760. Also, we presume the jury follows the trial court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

---

[10] Christopher asserts, without support or analysis, that the prosecutor's error could not have been cured with an instruction and there is a substantial likelihood that the misconduct affected the verdict. Therefore we do not consider this argument. RAP 10.3(a)(6); *Cowiche Canyon Conservatory v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

During closing arguments, the prosecutor argued, "You'll notice in the definition it doesn't say it has to be loaded, though at least in Count 4 on the possession with intent, each of those firearms was actually loaded." 5 VRP at 624. Christopher did not object.

Christopher argues that the prosecutor misinformed the jury because there was no evidence that each firearm was loaded. Christopher is correct that the record does not show that each firearm was loaded. The record shows that the .357 magnum pistol found in the unlocked safe was loaded; the 9 mm Beretta was unloaded, but that the ammunition for that firearm was nearby; and the record does not indicate whether the rifle was loaded. However, Christopher fails to show how a curative instruction could not have cured any resulting prejudice. Also, the jury was instructed that the lawyer's arguments are not evidence, and we presume that the jury follows instructions. *Anderson*, 153 Wn. App. at 428.

Christopher does not argue that the jury was misinformed of the applicable standard or law.[11] Also, the evidence showed there was a loaded firearm in an unlocked safe in the bedroom. Thus, even if the prosecutor's statement was erroneous, Christopher fails to show that the statement had a substantial likelihood of affecting the verdict. Christopher's prosecutorial misconduct challenge fails.

---

[11] The jury was instructed, in part, that a "person is armed with a firearm if, at the time of the commission of the crime, the firearm is easily accessible and readily available for offensive or defensive use." CP at 60.

C.      FORFEITURE

The trial court ordered Christopher to "[f]orfeit all seized property referenced in the discovery to the originating law enforcement agency unless otherwise stated." CP at 89. Christopher claims that the sentencing court erred by ordering forfeiture of property without statutory authority, based on *State v. Roberts*, 185 Wn. App. 94, 339 P.3d 995 (2014). *Roberts* held the trial court must have statutory authority to order forfeiture of property in connection with a criminal conviction. *Roberts*, 185 Wn. App. at 96. The State concedes this issue. We accept the State's concession and vacate the trial court's forfeiture order.

D.      STATEMENT OF ADDITIONAL GROUNDS[12]

Christopher provides one argument in her SAG. She states:

Under CrR 3.2.1(d)(1) a defendant shall appear in Superior Court "as soon as practicable after detention" unless scheduled to appear in District Court pursuant to CrRLJ 3.2.1. The State misused CrRLJ 3.2.1 to file this criminal case therefore violating the defendant's right to a speedy trial. Defendant was initially arraigned in District Court in January 2014, knowing that the case would never be heard in District Court. Subsequently moved to Superior Court in April 2014.

SAG.

The record does not contain any evidence of arraignment in district court in January 2014 or any district court records. Accordingly, Christopher's argument is outside the record and not properly raised in a statement of additional grounds. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Therefore, we do not address this issue.

---

[12] RAP 10.10.

No. 47002-1-II

We affirm Christopher's conviction and sentence but vacate the trial court's forfeiture order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Johanson, J.J.

Sutton, J.